**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID LEE, On Behalf of Himself and All Others Similarly Situated, ) ) ) | Civil Action No. _____ |
| Plaintiff, ) | **CLASS ACTION COMPLAINT** |
| v. ) | **FOR VIOLATION OF THE** |
| SYNERGY PHARMACEUTICALS INC., ) | **FEDERAL SECURITIES LAWS** |
| GARY S. JACOB, and GARY ) | |
| GEMIGNANI, ) | **DEMAND FOR JURY TRIAL** |
| Defendants. ) | |

Plaintiff David Lee ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges as follows based upon personal knowledge as to himself and his own acts and upon information and belief as to all other matters, based on the investigation conducted by and through his attorneys, which included, among other things, review of U.S. Securities and Exchange Commission ("SEC") filings by Synergy Pharmaceuticals Inc. ("Synergy" or "the Company"); conference call transcripts; media and analyst reports about the Company; and other public statements, filings and press releases by or about Synergy.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.      This is a securities class action on behalf of all persons who purchased or otherwise acquired the common stock of Synergy between September 5, 2017 and November 14, 2017, inclusive (the "Class Period").  The Action is brought against Synergy, Gary S. Jacob ("Jacob"), the Company's Chairman of the Board of Directors, President and Chief Executive Officer ("CEO") during the Class Period, and Gary Gemignani ("Gemignani"), the Company's

Case 1:18-cv-00873-AMD-VMS   Document 1   Filed 02/08/18   Page 2 of 17 PageID #: 23

Executive Vice President and Chief Financial Officer ("CFO"), for their dissemination of materially false and misleading statements and concealment of material adverse facts in violation of the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Synergy, throughout the Class Period, had only one FDA-approved commercial product, TRULANCE™ (plecanatide) ("Trulance"), a drug for the once-daily treatment of chronic idiopathic constipation ("CIC").   Trulance was approved by the FDA on January 19, 2017 and became available for purchase at the end of the first quarter of 2017.   Prior to and during the Class Period, Synergy had an internal staff of researchers and positioned itself as a go-it-alone inventor, manufacturer and seller of its own products.   It eschewed licensing partnerships with established drug manufacturers and distributors to disseminate Trulance; instead, choosing to manufacture and distribute Trulance through third party contract manufacturers and a cadre of 250 sales representatives.   By foregoing partnering with an established drug manufacturer, Synergy sought to retain the profits generated by Trulance, even though that would increase the initial costs to the Company and set back the timeline for achieving profitability.

3.      The Company's go-it-alone strategy also meant that it needed to fund its operations through equity offerings and/or loans.   To that end, on September 5, 2017, the beginning of the Class Period, Synergy announced that it closed on a $300 million senior secured loan from CRG Partners III L.P. ("CRG" and the "CRG Loan"), providing an immediate cash infusion of $100 million with a second $100 million tranche of CRG Loan financing less than six months later, on or before February 28, 2018, and a third tranche of up to $100 million in the following 13 months.   Defendant Gemignani extolled the newly-secured loan as "***non-dilutive***"[1]

---

[1] All emphasis within this Class Action Complaint for Violation of the Federal Securities Laws is added unless otherwise stated.

to the equity interests of the Company's shareholders while providing a material boost to Synergy's "cash position." Gemignani represented that the CRG Loan gave Synergy the "financial flexibility to continue to execute on the launch of Trulance and achieve our business objectives, which we are confident will ultimately maximize long-term shareholder value" by providing the Company "with access to capital for support of our commercialization of Trulance and *funds our current plans for the Company through 2019* when, based on our current assumptions, we expect to be cash flow breakeven."

4.    As a result of these and further assurances that Synergy had: (i) arranged ample debt financing to keep its operations running through 2019; (ii) maintained a large capital cushion to achieve its business objectives; and (iii) had a manageable cash burn rate, the investing public was led to believe that Synergy could and would successfully develop and profit from Trulance without needing to raise additional capital through additional equity offerings and without diluting stockholders' outstanding equity interests.

5.    The CRG Loan was, however, subject to various significant onerous terms and conditions undisclosed by the Defendants that rendered materially false and misleading their statements regarding the CRG Loan, its non-dilutive effect, its availability "if and when needed," and its sufficiency to fund the Company's operations through 2019 and permit it to achieve its business objectives. When Defendants disclosed Synergy's entry into the CRG Loan, they were required to speak truthfully and provide all material information necessary to ensure that their statements were neither false nor misleading. This duty was heightened since the Defendants did not, at that time, file the CRG Loan document with the SEC or otherwise make it publicly available.

6.    On November 14, 2017, the end of the Class Period, the truth finally came out. The CRG Loan had critical undisclosed terms and conditions that prevented the Company from

accessing funds "when needed," and that all but assured that Synergy would be required to conduct a dilutive secondary equity offering or offerings to fund its operations through 2019 and achieve its business objectives and secure the second $100 million tranche of the CRG Loan.

7.      Indeed, on November 14, 2017, Synergy conducted a secondary offering of approximately 22 million shares at $2.58 per share with warrants to purchase shares in the future at $2.86 per share, for net proceeds of $52.4 million.  The offering was materially dilutive of current shareholders' equity interests, contrary to Defendants' representations.  The 10% dilution of the outstanding equity (and 20% dilution if the warrants are exercised), resulted in an immediate 10% drop in the Company's stock price, to the detriment of those persons and entities who purchased Synergy stock during the Class Period (the "Class Members").  This dilutive capital increase was described by investors as "unexpected," "blindsiding," "reducing confidence in management," stoking "fears about further unexpected dilution," "sending the stock into a tailspin," and supposedly "unnecessary given current cash reserves and access to [the CRG Loan] non-dilutive debt financing."

8.      As the market digested the news and the full extent of Defendants' materially false and misleading statements was made apparent, Synergy's share price continued its downward spiral; trading as low as $1.68 per share on the following day, November 15, 2017.

## JURISDICTION AND VENUE

9.      Jurisdiction is conferred by 28 U.S.C. §1331 and §27 of the Exchange Act.  The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

10.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because Synergy is headquartered in New York City; Plaintiff resides in this District; and acts and practices complained of herein occurred in substantial part in this District.

4

11.    In connection with the conduct complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.    Plaintiff David Lee, without knowledge of the false and misleading nature of Defendants' statements, purchased Synergy stock during the Class Period and was damaged thereby.  The Certification attached hereto reflects the date and amount of Plaintiff's purchase of Synergy stock during the Class Period.

13.    Defendant Synergy is incorporated under the laws of the State of Delaware. Synergy is a biopharmaceutical company focused on development and commercialization of therapies to treat Gastro-Intestinal disorders and diseases.  The Company's principal executive offices are maintained at 420 Lexington Avenue, Suite 2012, New York, New York 10170.  It has over 246 million shares of common stock outstanding that are traded on the Nasdaq Global Select Market under the symbol "SGYP."

14.    Defendant Jacob was the Company's Chairman of the Board of Directors, President and CEO during the Class Period.  On December 21, 2017, he relinquished the CEO title.  During the Class Period, Jacob also served as an officer and/or director at other Synergy-related entities.  Throughout the Class Period, Jacob took the actions and/or made the statements detailed herein in his capacity as an officer and/or director of Synergy.

15.    Defendant Gemignani is the Company's Executive Vice President and CFO. Throughout the Class Period, Gemignani acted and/or made the statements detailed herein in his capacity as an officer of Synergy.  Defendants Jacob and Gemignani are referred to collectively as the "Individual Defendants."

5

16.     The Individual Defendants possessed the power and authority to control the contents of Synergy's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them, but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

17.     Plaintiff brings this action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and under the Exchange Act on behalf of all persons, other than the Defendants herein, who purchased or otherwise acquired the common stock of Synergy during the Class Period (the "Class") and suffered damages thereby.

18.     The Class Members are so numerous that joinder of all members is impracticable. As of the time of filing of this Complaint, there were over 246 million shares of Synergy common stock outstanding held by approximately 638 holders of record.

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether the Defendants violated Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, as alleged herein;

(b) Whether the Class Period statements alleged herein contained materially false and misleading statements;

6

(c) Whether the Class Period statements alleged herein omitted material facts that were necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading;

(d) Whether the Defendants acted knowingly or recklessly in issuing materially false and misleading statements and omitting material information

(e) Whether the prices of Synergy securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

(f) Whether the Plaintiff and the Class Members have sustained damages and, if so, the proper measure of those damages.

20.     Plaintiff's claims are typical of the claims of the Class Members, as they are based on the same facts and legal theories.  Plaintiff and the Class Members have sustained damages arising out of Defendants' wrongful conduct in violation of federal law, as complained of herein.

21.     Plaintiff will fairly and adequately protect the interests of the Class Members and has retained counsel competent and experienced in class action and securities litigation.  Plaintiff has no interests antagonistic to, or in conflict with, those of the Class Members.

22.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, since joinder of all Class Members is impracticable.  Furthermore, because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation makes it impracticable for Class Members individually to redress the wrongs done to them.

23.     Plaintiff anticipates no difficulty in the management of this action as a class action.

## NO STATUTORY SAFE HARBOR

24.     The statutory safe harbor provided for forward-looking statements (under certain circumstances) does not apply to any of the materially false statements and omissions alleged in

7

this complaint.  The statements alleged to be materially false and misleading all relate to then-existing facts and conditions.  In addition, none of the statements alleged herein were identified as "forward-looking statements" when made.  Nor did meaningful cautionary language identify important factors that could cause actual results to differ materially from those stated.

## SUBSTANTIVE ALLEGATIONS

25.     On September 5, 2017, the beginning of the Class Period, Synergy issued a press release and filed with the SEC a Current Report on Form 8-K, signed by Defendant Jacob, reporting that four days earlier, on September 1, it closed the CRG Loan – a $300 million senior secured loan provided by a syndicate of lenders organized by CRG, a healthcare focused investment firm.  According to the announcement, the loan provided for a first tranche of $100 million to be loaned to Synergy upon execution of the loan documents and future borrowings of an additional $100 million on or before February 28, 2018 and up to two additional tranches of up to $50 million each on or before March 29, 2019, subject to satisfaction of certain unspecified financial and revenue milestones and other borrowing conditions.  The CRG Loan matures on June 30, 2025, with quarterly interest only payments for the initial five-year period, and 12 equal quarterly installments of principal and interest during the final three years.  The CRG Loan converts to an eight-year interest only period (if certain unspecified milestones are achieved) with an annual interest rate of 9.50%.  According to the announcement, the CRG Loan requires the Company to: (a) comply with an unspecified minimum market capitalization covenant, (b) maintain its listing on a national securities exchange, (c) maintain an unspecified daily minimum liquidity covenant, and (d) maintain an unspecified annual revenue requirement based on the sales of Trulance.  Pursuant to the loan agreement, Synergy has the option to prepay outstanding loan amounts anytime during the loan.

26.     In the September 5, 2017 press release, Defendant Gemignani described this debt financing as advantageous to the Company because it was "***non-dilutive,***" enhanced Synergy's "cash position," and provided "financial flexibility to continue to execute on the launch of Trulance and achieve our business objectives, which we are confident will ultimately maximize long-term shareholder value***."*** Gemignani further represented that the structuring of this particular debt financing was to "provide[ the Company] with access to capital for support of our commercialization of Trulance and ***funds our current plans for the Company through 2019*** when, based on our current assumptions, we expect to be cash flow breakeven."

27.     On September 7, 2017, Synergy's management held a conference call with investment analysts to provide a business update.  On the call, Defendant Jacob touted the securing of the CRG Loan and its purported salutary effect on Synergy's financial condition and its ability to develop and market Trulance and achieve its key business priorities:

> This financing strengthens our cash position and provides us with financial flexibility to continue to execute on the launch of Trulance and achieve our key business priorities, which we are confident will ultimately maximize shareholder value.
>
> ***
>
> The debt financing . . . ***provides access to additional capital if and when we need it***, and gives us the greatest flexibility to execute on our corporate strategy.

28.     Defendant Gemignani also extolled the CRG Loan on the call.  Echoing Jacob's materially false and misleading statements and omissions, Gemignani represented:

> [W]e achieved an important milestone. . . .  This ***non-dilutive financing*** enhances our cash position and provides us with financial flexibility to continue to execute on the launch of Trulance and achieve our business objectives. . . .
>
> The structure of the deal provides us with access to additional capital ***if and when we need it***, to support the product launch and to take the company through 2019 when based on our current assumptions we expect Synergy to be cash flow breakeven.

9

29.     On November 9, 2017, in both a press release and a Form 8-K filed with the SEC, Synergy announced its financial results for its third quarter, ending September 30, 2017.  The Company reported that more than 25,000 prescriptions of Trulance were filled for $5 million of net sales, reflecting net revenue growth of 117% over the second quarter, and that prescription volume increased more than 105% over the second quarter.  Regardless, Synergy reported a net loss for the third quarter of $48.9 million.  As to the Company's cash position, $59.3 million was used for operations, $117.8 million was on hand, and the Company had $110.5 million of working capital.  Finally, Synergy reported net revenue of $7.4 million from the launch of Trulance through the end of the third quarter.

30.     Discussing Synergy's third quarter earnings on its conference call with financial analysts later that day, Defendant Gemignani stated the following about the CRG Loan, which he characterized as "ensuring [Synergy] a strong financial foundation":

> Under the terms of the agreement, we have access to an additional $100 million on or before February 28, 2018 and up to two additional tranches of up to $50 million on or before March 29, 2019 subject to certain conditions.  ***While I cannot comment on specific conditions required to access the additional tranches beyond what's publicly disclosed, I can tell you that we are confident in our ability to meet the conditions that will allow us to access to the additional capital if and when we need it*.**  As we move ahead, we are and will continue to evaluate opportunities to improve expense management, prioritizing investments that drive long-term growth and transition the company to a cash flow positive. The Synergy team remains focused on continuing to execute across all areas of our business to maximize the value of Trulance to its patients, health care providers and to our shareholders.

31.     The statements referenced in ¶¶ 25-30 were materially false and misleading because they misrepresented and/or failed to disclose the following material facts, which were known to Defendants or recklessly disregarded by them:

(a)  Contrary to the Individual Defendants' statements, the CRG Loan did not fund Synergy's operations through 2019;

(b)   The Company could not access the second tranche of $100 million financing on or before February 28, 2018 without issuing dilutive equity because the CRG Loan terms (which were not disclosed until the end of the Class Period) required that the Company's cash balance on January 31, 2018 be no less than $128 million to access the second tranche of funding.  However, as of September 30, 2017, the Company had a cash balance of only $117.8 million, approximately $10 million less than the required cash balance to access the second tranche of the CRG Loan and the Company's average cash burn rate was $60 million per quarter.  The Company's cash balance adjusted for its burn rate reduced the Company's cash balance to only $58 million as of September 30, 2017 – less than half of the cash balance required to access the second tranche of non-dilutive debt funding made available by CRG;

(c)   The representations that the CRG Loan was "non-dilutive" were materially false and misleading since the Company could not access the second tranche of the CRG Loan without issuing additional dilutive equity to meet the cash balance requirements set out in the CRG Loan;

(d)   In light of the foregoing, it was materially false and misleading for the Individual Defendants to represent, as they did several times, that the CRG Loan would "provide additional capital if and when we need it."  In fact, the CRG Loan was not structured in a manner to provide Synergy additional capital when needed;

(e)   The CRG Loan did not ensure a "strong financial foundation" for Synergy; and

(f)   The Company could not access the third tranches of the CRG Loan "if and when needed" because terms (which were not disclosed until the end of the Class Period), which were required to be met in order to access those tranches of the CRG Loan, could not be met as required.  Moreover, the omission of these terms in the Defendants' statements concerning the CRG Loan, its non-dilutive effect, and establishment of a strong financial foundation for the Company, rendered all of the Defendants' statements materially false and misleading because it would be nearly impossible for Synergy to comply with those terms without making additional, dilutive secondary offerings.

32.   The statements referenced in ¶ 30 were also materially false and misleading because Defendant Gemignani misrepresented the Company's confidence in meeting the conditions permitting access to the additional CRG capital when needed.  Having spoken, Gemignani was required to tell the whole truth, but he failed to disclose the critical conditions precedent required to be satisfied in order to access the additional tranches of the CRG Loan, which were known to – but recklessly disregarded – by him, as more fully set forth above.

**The Truth Is Revealed**

33.     Later on November 9, 2017, at approximately 5:08 p.m. (well after the stock market closed to trading and over an hour after it issued its press release), Synergy filed with the SEC its Quarterly Report on Form 10-Q for the third quarter ending September 30, 2017, and attached as an exhibit the underlying CRG Loan.  In addition to the financial performance measures already disclosed in its Form 8-K and press release issued earlier in the day, the Form 10-Q reported that net cash used in operating activities over the entire nine month period was slightly over $180 million, double the amount expended for the same period in the prior year.

34.     Furthermore, the exhibit to the November 9, 2017 Form 10-Q for the first time disclosed the true terms of the CRG Loan and their effect upon Synergy's financial condition and business prospects.  Contrary to the materially misleading statements made at the time the CRG Loan was initially disclosed, and notwithstanding the representation that the Company was in compliance with all applicable covenants as of September 30, 2017, the terms of the CRG Loan *were* dilutive to the outstanding equity interests of shareholders; the CRG Loan by itself did *not* provide Synergy with the financial flexibility to continue to execute on the launch of Trulance and achieve its business objectives; and the CRG Loan by itself could *not* and would *not* fund the Company's plans through 2019.

35.     On November 10, 2017, the very next day, Synergy's share price plunged to as low as $2.68, closing at $2.72 per share.

36.     On November 13, 2017, Synergy filed with the SEC an automatic shelf registration statement on Form S-3 (the "Registration Statement") allowing future offerings of securities to the public from time to time (pursuant to Rule 415 of the SEC's General Rules and Regulations), as needed and authorized by the Board of Directors over the ensuing three years, including shares of common stock, preferred stock, debt, warrants and units.

12

37.     On the very next day, November 14, 2017, the end of the Class Period, the Company filed a takedown prospectus supplement to the prior day's shelf registration, disclosing completion of a secondary offering of approximately 22 million Synergy shares at $2.58 per share, with warrants to purchase another 22 million shares in the future at $2.86 per share, for gross proceeds of approximately $56 million and net proceeds of $52.4 million, after deducting underwriting discounts and commissions and estimated offering expenses.  The effect of this secondary offering was to increase the Company's outstanding stock and thereby dilute the prior stockholders' equity interests by approximately 10%, resulting in an immediate 10% drop in the Company's stock price, which fell below $2.50 per share.

38.     An article published by Seeking Alpha concerning Synergy's announcement of its secondary offering described that announcement as "blindsiding many investors and sending the stock into a tailspin."  The article noted that it was "doubly strange" that no mention of the secondary offering was made during the earnings call Synergy held with financial analysts less than a week before, on November 9, 2017.  Indeed, even more deceptive was that the onerous terms of the CRG Loan were not disclosed when the financing was announced.  The author of the article was "struck in particular" by Defendant Gemignani's statement (set out in ¶ 30, above), concluding that the statement "looks a lot like obfuscation . . . bordering on deliberate misdirection."  The article notes a loss of confidence in Synergy's management:  "Can we trust Synergy management? . . .  The question is especially pertinent given the company's claims after its last secondary offering in January, that it would not do it again.  For those holding for a longer-term capital appreciation, the specter of dilution will be omnipresent."

39.     As the market digested the truth regarding the CRG Loan and its effect upon Synergy's financial condition and business prospects, Synergy's share price continued to plunge, trading as low as $1.68 per share on November 15, 2017.

13

## LOSS CAUSATION

40.     Upon the commencement of trading on November 10, 2017, one day following Synergy's disclosure of the full terms and conditions of the CRG Loan, and again on November 15, 2017, one day following disclosure of the secondary offering, the Company's stock price plunged in value and has continued to remain depressed.  This decline is attributable to the disclosures of the true nature of the CRG Loan, which was previously withheld and/or misrepresented.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD ON THE MARKET

41.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)     Defendants made public misrepresentations and/or failed to disclose material facts during the Class Period;

(b)     The misrepresentations and omissions were material;

(c)     The Company's stock traded in an efficient market;

(d)     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

(e)     Plaintiff and other members of the Class purchased Synergy common stock between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

42.     At all relevant times, the market for Synergy common stock was efficient for the following reasons, among others:

(a)     As a regulated issuer, Synergy filed periodic public reports with the SEC; and

(b)     Synergy regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the major news wire services and through other wide-ranging public

disclosures, such as communications with the financial press, securities analysts and other similar reporting services.

43. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**For Violation of §10(b) of the Exchange Act and Rule 10b-5**
**Against All Defendants**

44. Plaintiff incorporates the prior paragraphs by reference.

45. During the Class Period, Defendants disseminated or approved the false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and/or failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46. Defendants violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they:

(a) Employed devices, schemes and artifices to defraud.

(b) Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

(c) Engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Synergy common stock during the Class Period.

(d) Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Synergy

common stock.  Plaintiff and the Class would not have purchased Synergy common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## COUNT II

### For Violation of §20(a) of the Exchange Act
### Against The Individual Defendants

47.     Plaintiff incorporates the prior paragraphs by reference.

48.     The Individual Defendants acted as controlling persons of Synergy within the meaning of §20(a) of the Exchange Act.  By virtue of their positions with the Company, and ownership of Synergy stock, the Individual Defendants had the power and authority to cause Synergy to engage in the wrongful conduct complained of herein.  By reason of such conduct, Defendants are liable pursuant to §20(a) of the Exchange Act.

**WHEREFORE**, Plaintiff and the Class pray for judgment as follows:

A.     Determining that this action is a proper Class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding damages in favor of Plaintiff and the other Class Members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Awarding Plaintiff and the Class such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED: February 8, 2018

Respectfully submitted,

Joseph H. Weiss
Mark D. Smilow
Joshua M. Rubin
**WEISSLAW LLP**
1500 Broadway
New York, New York 10036
(212) 682-3025

*Counsel for Plaintiff*